## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES FIRE INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No.: 1:19-cv-02947 |
| XANITOS, INC., CHRISTOPHER BYCZEK, individually and on behalf of all others similarly situated, and BRITTANY LLOYD, individually and on behalf of all others similarly situated. | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, United States Fire Insurance Company ("U.S. Fire"), by and through its undersigned counsel, as and for its Complaint for Declaratory Judgment against Defendants, Xanitos, Inc. ("Xanitos"), Christopher Byczek, individually and on behalf of all others similarly situated, and Brittany Lloyd, individually and on behalf of all others similarly situated, states as follows:

## NATURE OF THE ACTION

1.      This is an action for declaratory judgment pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201. In this action, U.S. Fire seeks a determination of its rights and obligations under an insurance policy issued to Xanitos in connection with Underlying Lawsuits filed by Christopher Byczek, individually and on behalf of all others similarly situated, and Brittany Lloyd, individually and on behalf of all others similarly situated, which assert certain claims against Xanitos.

## JURISDICTION AND VENUE

2.      This is an action for declaratory judgment pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure.

3.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a), as this action is between citizens of different states and the amount in controversy exceeds $75,000.

4.      Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. § 1391(a) as certain defendants reside in the Northern District of Illinois and the events at issue took place in the Northern District of Illinois.

5.      Plaintiff United States Fire Insurance Company is a corporation organized and existing under the laws of the state of Delaware, with its principal place of business in the state of New Jersey.

6.      Defendant Xanitos, Inc. is a corporation organized and existing under the laws of the state of Pennsylvania, with its principal place of business located at 3809 West Chester Pike, Newtown Square, Pennsylvania 19073.

7.      Defendant Christopher Byczek is an adult individual who is a citizen of and is domiciled in the state of Illinois. Plaintiff U.S. Fire does not assert any claim against Defendant Byczek in the Complaint and Defendant Byczek has been named as a defendant in this action solely as a necessary and indispensable party.

8.      Defendant Brittany Lloyd is an adult individual who is a citizen of and is domiciled in the state of Illinois. Plaintiff U.S. Fire does not assert any claim against Defendant Lloyd in the Complaint and Defendant Lloyd has been named as a defendant in this action solely as a necessary and indispensable party.

9.      The Underlying Actions (as defined herein) are pending in the Circuit Court of

Cook County, Illinois.

10.     U.S. Fire issued a policy of insurance to Xanitos, as described more fully below.

11.     The scope of the coverage available to the Xanitos is governed by the terms, conditions, and exclusions of the policy.

**THE UNDERLYING ACTIONS**

12.     On or about October 19, 2018, plaintiff Christopher Byczek filed a class action lawsuit against Xanitos styled *Christopher Byczek, individually and on behalf of all others similarly situated v. Xanitos, Inc.*, case no. 18-CH-13064, in the Circuit Court of Cook County, Illinois (the "*Byczek* Suit"). On or about December 11, 2018, plaintiff Brittany Lloyd filed a class action lawsuit against Xanitos styled *Brittany Lloyd, individually and on behalf of all others similarly situated v. Xanitos, Inc.*, case no. 18-cv-15351 in the Circuit Court of Cook County, Illinois  (the "*Llyod* Suit"). The *Byczek* Suit and the *Lloyd* Suit are referred to collectively herein as the "Underlying Actions". The allegations contained in the respective complains filed in the Underlying Actions are substantially identical.[1] A true and correct copy of the Byczek complaint is attached hereto as Exhibit A. A true and correct copy of the Lloyd complaint is attached hereto as Exhibit B.

13.     In the Complaints, the underlying plaintiffs assert a single cause of action against Xanitos for violation of the Biometric Information Privacy Act, 740 ILCS 14/1, *et seq*. (the "BIPA").

14.     The Complaints allege that the state of Illinois enacted the BIPA specifically to regulate companies that collect and store Illinois' citizens' biometrics, such as fingerprints. The

---

[1] Plaintiffs Byczek and Lloyd, and their respective putative classes, are referred to herein as the "underlying plaintiffs" and the substantially identical complaints filed in the Underlying Actions are referred to herein as the "Complaints".

Complaints further allege that, despite this law, Xanitos disregards its employees' statutorily protected privacy rights and unlawfully collects, stores, and uses their biometric data in violation of the BIPA. Exs. A & B, ¶ 5.

15.     The Complaints allege that Xanitos has violated, and continues to violate, the BIPA because it did not:

- properly inform underlying plaintiffs and the putative class members in writing of the specific purpose and length of time for which their fingerprints were being collected, stored, and used, as required by the BIPA;

- provide a publicly available retention schedule and guidelines for permanently destroying underlying plaintiffs'' and the putative class's fingerprints, as required by the BIPA; nor

- receive a written release from underlying plaintiffs or the members of the putative class to collect, capture, or otherwise obtain their fingerprints, as required by the BIPA.

Exs. A & B, ¶¶ 30, 31, 33.

More specifically, the Complaints allege that Xanitos violated the BIPA by: (i) negligently failing to obtain written release from underlying plaintiffs and the putative class before it collected, used, and stored their biometric identifiers and biometric information; (ii) negligently failing to inform underlying plaintiffs and the putative class in writing that their biometric identifiers and biometric information were being collected and stored; (iii) negligently failing to inform underlying plaintiffs and the putative class in writing of the specific purpose and length of term for which their biometric identifiers or biometric information was being collected, stored and used; and (iv) by negligently failing to publicly provide a retention schedule or guideline for permanently

destroying its employees' biometric identifiers and biometric information. Exs. A & B, ¶¶ 23, 24.

16.     The Complaints seek, *inter alia*, injunctive and equitable relief as is necessary to protect the interests of the underlying plaintiffs by requiring Xanitos to comply with the BIPA's requirements for the collection, storage, and use of biometric identifiers and biometric information, liquidated damages of $1,000 per violation for each of Xanitos' negligent violations of the BIPA, and reasonable attorneys' fees and costs and expenses.

## THE POLICY

17.     United States Fire Insurance Company issued Policy Number 5417117001 to Named Insured Xanitos, Inc. which provided Commercial General Liability coverage with limits of liability of $1,000,000 Each Occurrence, $1,000,000 Personal and Advertising Injury, $2,000,000 General Aggregate, and with effective dates of March 31, 2018 to March 31, 2019. (the "Policy"). A true and correct certified copy of the Policy is attached hereto as Exhibit C.

18.     Coverage A under the Commercial General Liability part of the Policy provides, in pertinent part, as follows:

**SECTION I – COVERAGES**

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILTY**

**1. Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

\* \* \*

**b.** This insurance applies to "bodily injury" and "property damage" only if:

   **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"

   **(2)** The "bodily injury" or "property damage" occurs during the policy period; and

\* \* \*

Ex. C, p. 84.

19.     The Commercial General Liability Coverage Part of the Policy also contains the following language regarding "Who Is An Insured":

**SECTION II – WHO IS AN INSURED**

**1.** If you are designated in the Declarations as:

\* \* \*

   **d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

\* \* \*

**2.** Each of the following is also an insured:

   **a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business . . .

* * *

EX. C, ps. 92-93.

20.     Coverage A under the Commercial General Liability part of the Policy includes the

following pertinent exclusions:

### 2. Exclusions

This insurance does not apply to:

* * *

### o. Personal And Advertising Injury

"Bodily injury" arising out of "personal and advertising injury".

* * *

### q. Recording And Distribution Of Material Or Information In Violation Of Law

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or additional to such law;
**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;
**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or
**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

Ex. C, p. 88-89.

21.     Pursuant to the Exclusion – Access or Disclosure of Confidential or Personal

Information and Data-Related Liability –With Limited Bodily Injury Exception endorsement,

Exclusion 2.p. of Coverage A was amended and replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**p. Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability**

Damages arising out of:

**(1)** Any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of non-public information; or
**(2)** The loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

* * *

As used in this exclusion, electronic data means information, facts or programs store as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

Ex. C, p. 142.

22.     Coverage B under the Commercial General Liability part of the Policy further provides, in pertinent part, as follows:

**COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages ofr "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits of Insurance; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

\* \* \*

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

Ex. C, p. 89.

23.     Coverage B under the Commercial General Liability part of the Policy includes the following pertinent exclusion:

**2. Exclusions**

This insurance does not apply to:

\* \* \*

**p. Recording And Distribution Of Material Or Information In Violation Of Law**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;
**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;
**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or
**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

Ex. C, p. 90.

24.     Furthermore, pursuant to the Exclusion – Access or Disclosure of Confidential or

Personal Information and Data-Related Liability – With Limited Bodily Injury Exception

endorsement, the following exclusion was added to Coverage B:

**2. Exclusions**

This insurance does not apply to:

**Access Or Disclosure Of Confidential Or Personal Information**

"Personal and advertising injury" arising out of any access to or disclosure of any
person's or organization's confidential or personal information, including patents,
trade secrets, processing methods, customer lists, financial information, credit card
information, health information or any other type of non-public information.

This exclusion applies even if damages are claimed for notification costs, credit
monitoring expenses, forensic expenses, public relations expenses or any other loss,
cost or expense incurred by you or others arising out of any access to or disclosure
of any person's or organization's confidential or personal information.

Ex. C, p. 142.

25.     The Policy contains the following relevant definitions:

**SECTION V – DEFINITIONS**

* * *

**13.** "Occurrence" means an accident, including continuous or repeated exposure to
substantially the same general harmful conditions.

**14.** "Personal and advertising injury" means injury, including consequential
"bodily injury", arising out of one or more of the following offenses:

 **a.** False arrest, detention or imprisonment;

 **b.** Malicious prosecution;

 **c.** The wrongful eviction from, wrongful entry into, or invasion of the right of
private occupancy of a room, dwelling or premises that a person occupies,
committed by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

**f.** The use of another's advertising idea in your "advertisement"; or

**g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

\* \* \*

**17.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All Such loss of use shall be deemed to occur at the time of the "occurrence" that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

Ex. C, p. 98.

26.     Pursuant to the Xanitos Enhancements endorsement, the definition of "bodily injury" was deleted and replaced by the following:

**1. Mental Anguish, Mental Injury Or Humiliation**

\* \* \*

"Bodily injury" means bodily injury, sickness or disease sustained by a person, including mental anguish, mental injury, humiliation or death resulting from any of these at any time.

Ex. C, p. 145.

## THIS DISPUTE

27.     Xanitos has sought a defense and indemnity from U.S. Fire under the Policy in connection with the claims asserted against it in the Complaints filed in the Underlying Actions.

11

28.     U.S. Fire has determined through its coverage investigation that it owes no obligation to defend or indemnify Xanitos in connection with the claims asserted against it in the Complaints in the Underlying Actions.

29.     U.S. Fire has advised Xanitos in writing that it disclaims any obligation under the Policy to provide a defense to or indemnify Xanitos in connection with the claims asserted against it in the Complaints in the Underlying Actions.

30.     U.S. Fire now brings this action to obtain a judicial declaration that it owes no duties under the Policy to defend or indemnify Xanitos in connection with the claims asserted against it in the Complaints in the Underlying Actions.

## COUNT I
### (Against Xanitos)

31.     U.S. Fire incorporates by reference herein paragraphs 1 through 30, as if the same were fully set forth at length.

32.     The insuring agreement for Coverage A provides, in pertinent part, that coverage is afforded for those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. Ex. C, p. 84.

33.     The Policy was amended to define "bodily injury" to mean, in pertinent part, "bodily injury . . . including mental anguish, mental injury, humiliation . . ." Ex. C, p. 145.

34.     The Policy defines "property damage" to mean "[p]hysical injury to tangible property, including all resulting loss of use of that property" and "[l]oss of use of tangible property that is not physically injured." Ex. C, ps. 98-99. The Policy's definition of "property damage" further provides that "[f]or the purposes of this insurance, electronic data is not tangible property." Ex. C, ps. 98-99.

35.     The Complaints allege that the underlying plaintiffs have been injured by Xanitos'

12

violations of the BIPA. The Complaints allege that "by collecting, storing, and using underlying plaintiff's and the putative class's biometric identifiers and biometric information . . ., Xanitos violated underlying plaintiff's and the putative class's rights to privacy in their biometric identifiers or biometric information as set forth in" the BIPA. The Complaints do not allege that the underlying plaintiffs and the putative class sustained "bodily injury" or incurred "property damage" as defined under the Policy as a result of any actions or omissions by Xanitos. Instead, the Complaints allege that Xanitos violated their privacy rights as a result of their violations of the BIPA.

36. Accordingly, because the Complaints do not allege that Xanitos is liable for "bodily injury" or "property damage", the claims asserted by the underlying plaintiffs against Xanitos do not fall within the scope of the insuring agreement of Coverage A of the Policy and, therefore, no coverage is afforded under Coverage A to Xanitos for the claims asserted against it in the Underlying Actions.

WHEREFORE, U.S. Fire seeks a judgment that it owes no duty under the Policy to defend or indemnify Xanitos, Inc. in connection with the claims asserted against it in the Complaints in the Underlying Actions.

## COUNT II
### (Against Xanitos)

37. U.S. Fire incorporates by reference herein paragraphs 1 through 36, as if the same were fully set forth at length.

38. There is no coverage afforded under Coverage A of the Policy to Xanitos for the claims asserted against it in the Underlying Actions. Moreover, to the extent any allegations in the Complaints could be reasonably interpreted as satisfying the requirements of coverage under the insuring agreement of Coverage A, certain exclusions and endorsements contained in Coverage A

of the Policy would operate to preclude coverage in this matter.

39.     Coverage A of the Policy contains exclusion o. which precludes coverage for "[b]odily injury" arising out of "personal and advertising injury". Ex. C, p. 88.

40.     The Policy defines "personal and advertising injury" to mean, in pertinent part, "injury, including consequential 'bodily injury', arising out of . . . [o]ral or written publication, in any manner, of material that violates a person's right of privacy". Ex. C, p. 98.

41.     The Complaints in the Underlying Actions allege that Xanitos violated the privacy rights of the underlying plaintiffs and the putative class through its violations of the BIPA. These allegations fall within the scope of "personal and advertising injury" as defined in the Policy.

42.     Accordingly, even if the allegations of the Complaints in the Underlying Actions met the requirements of the Insuring Agreement of Coverage A of the Policy, the Policy does not afford coverage to Xanitos because the claims asserted against Xanitos in the Underlying Actions seek to impose liability on Xanitos for "personal and advertising injury" suffered by the underlying plaintiffs and the putative class, which is precluded from coverage by the Personal and Advertising Injury exclusion contained in Coverage A of the Policy.

43.     Pursuant to endorsement, Coverage A of the Policy was amended to replace exclusion p. with the Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability exclusion. This exclusion precludes coverage for "[d]amages arising out of: (1) [a]ny access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of non-public information; or (2) the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data. The exclusion further provides that "[a]s used in this exclusion, electronic data means

14

information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment". Ex. C, p. 142.

44.     The Complaints seek "liquidated damages under BIPA" against Xanitos for injuries arising out of the alleged access to or disclosure of the underlying plaintiffs' and the putative class's confidential or personal information, health information, and other non-public information in violation of the BIPA. Specifically, the Complaints allege that the rights to privacy of the underlying plaintiffs and the putative class were violated by Xanitos' failure to inform the underlying plaintiffs and/or the class in writing that their biometric information was being collected and stored, the specific purpose and length of term for which the information was being collected and stored, and any retention schedule for permanently destroying the information.

45.     Accordingly, even if the allegations of the Complaints in the Underlying Actions met the requirements of the Insuring Agreement of Coverage A of the Policy, the Policy would not afford coverage to Xanitos because the claims asserted against Xanitos in the Underlying Actions seek to impose liability on Xanitos for  damages arising out of alleged access to or disclosure of the underlying plaintiffs' and putative class's confidential or personal information, health information, and other non-public information, which is precluded from coverage by exclusion of Coverage A of the Policy.

46.     Coverage A of the Policy contains exclusion q. which precludes coverage for "'[b]odily injury' . . . arising directly or indirectly out of any action or omission that violates or is alleged to violate: . . . (4) [a]ny federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses,

prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information". Ex. C, ps. 88-89.

47.     The Complaints allege that Xanitos has caused injuries to the underlying plaintiffs and the putative class by its violations of the BIPA. Specifically, the Complaints allege that Xanitos violated the BIPA by: i) negligently failing to obtain written releases from underlying plaintiffs and the putative class before it collected, used, and stored their biometric identifiers and biometric information; ii) negligently failing to inform underlying plaintiffs and the putative class in writing that their biometric identifiers and biometric information were being collected and stored; iii) negligently failing to inform underlying plaintiffs and the putative class in writing of the specific purpose and length of term for which their biometric identifiers or biometric information was being collected, stored and used; and iv) by negligently failing to publicly provide a retention schedule or guideline for permanently destroying its employees' biometric identifiers and biometric information. The Complaints further assert that underlying plaintiffs seek "liquidated damages under BIPA as compensation for the injuries Xanitos has caused by its violations of the BIPA.

48.     Accordingly, even if the allegations of the Complaints in the Underlying Actions met the requirements of the Insuring Agreement of Coverage A, the Policy would not afford coverage for the claims asserted against Xanitos in the Underlying Actions because the claims arise out of Xanitos' alleged violations of the BIPA, which is precluded from coverage by exclusion q of Coverage A of the Policy.

WHEREFORE, U.S. Fire seeks a judgment that it owes no duty under the Policy to defend or indemnify Xanitos, Inc. in connection with the claims asserted against it in the Complaints in the Underlying Actions.

**COUNT III**
**(Against Xanitos)**

49.     U.S. Fire incorporates by reference herein paragraphs 1 through 48, as if the same were fully set forth at length.

50.     To the extent the allegations of the Complaints could be reasonably interpreted as satisfying the requirements of the Insuring Agreement of Coverage B of the Policy, coverage for the claims asserted against Xanitos in the Underlying Actions is precluded under Coverage B of the Policy by operation of the certain  exclusions.

51.     Coverage B of the Policy contains exclusion p. which precludes coverage for "'[p]ersonal and advertising injury' . . . arising directly or indirectly out of any action or omission that violates or is alleged to violate . . . (4) [a]ny federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information". Ex. C, p. 90.

52.     The Policy defines "personal and advertising injury" to mean, in pertinent part, "injury, including consequential 'bodily injury', arising out of . . . [o]ral or written publication, in any manner, of material that violates a person's right of privacy". Ex. C, p. 98.

53.     The Complaints specifically allege that the rights of privacy of the underlying plaintiffs and the putative class were violated by Xanitos' violations of the BIPA. Specifically, the Complaints allege that by negligently collecting, storing, and using underlying plaintiffs' biometric identifiers or biometric information, Xanitos violated the underlying plaintiffs' and the putative class's rights to privacy in their biometric identifiers or biometric information as set forth in the BIPA.

54.     Accordingly, even if the allegations of the Complaints in the Underlying Actions

met the requirements of the Insuring Agreement of Coverage B of the Policy, the Policy would not afford coverage for the claims asserted against Xanitos in the Underlying Action because the Complaints allege "personal and advertising injury" arising out of Xanitos' violations of the BIPA, which is precluded from coverage by exclusion p of Coverage B of the Policy.

55.     Pursuant to endorsement, Coverage B of the Policy was amended to add the Access Or Disclosure Of Confidential Or Personal Information and Data-related Liability exclusion. This exclusion precludes coverage for "'[p]ersonal and advertising injury' arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of non-public information." The Policy defines "personal and advertising injury" to mean, in pertinent part, "injury, including consequential 'bodily injury', arising out of . . . [o]ral or written publication, in any manner, of material that violates a person's right of privacy". Ex. C, p. 142.

56.     The exclusion further provides that it applies "even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information". Ex. C, p. 142.

57.     The Complaints allege that the underlying plaintiffs and putative class sustained "personal and advertising injury" which arises out of Xanitos' alleged access to or disclosure of underlying plaintiffs' confidential or personal information, health information, and other non-public information. Specifically, the Complaints allege that Xanitos violated the rights of privacy of the underlying plaintiffs and the putative class by negligently collecting, storing, and using underlying plaintiffs' biometric identifiers or biometric information. Exs. A & B, ¶¶ 48-50.

58. Accordingly, even if the allegations of the Complaints in the Underlying Actions met the requirements of the Insuring Agreement of Coverage B of the Policy, the Policy would not afford coverage to Xanitos for the claims asserted against it in the Underlying Actions because the Complaints seek to impose liability on Xanitos for "personal and advertising injury" arising out Xanitos' alleged access to or disclosure of underlying plaintiffs' confidential or personal information, health information, and other non-public information, which is precluded from coverage by the Access Or Disclosure Of Confidential Or Personal Information exclusion of Coverage B of the Policy.

WHEREFORE, U.S. Fire seeks a judgment that it owes no duty under the Policy to defend or indemnify Xanitos, Inc. in connection with the claims asserted against it in the Complaints in the Underlying Actions.

## PRAYER FOR RELIEF

Plaintiff United States Fire Insurance Company hereby respectfully requests the entry of an order and judgment in its favor and against Defendants Xanitos, Inc., Christopher Byczek, individually and on behalf of all others similarly situated, and Brittany Lloyd, individually and on behalf of all others similarly situated, declaring as follows:

a. This court has jurisdiction over the parties and the subject matter of this litigation;

b. The Policy does not provide coverage to Defendant Xanitos, Inc. for the claims asserted against it in the Complaints in the Underlying Actions;

c. U.S. Fire does not owe a duty under the Policy to defend Defendant Xanitos, Inc. or reimburse defense costs incurred by Defendant Xanitos, Inc. in connection with the claims asserted against it in the Complaints in the Underlying Actions;

d. U.S. Fire does not owe a duty under the Policy to indemnify Defendant Xanitos, Inc. in connection with the claims asserted against it in the Complaints in the Underlying Actions;

e.  U.S. Fire is entitled to an award of its costs; and

f.  Such other further relief as this Court deems just and appropriate.

Respectfully Submitted,

UNITED STATES FIRE INSURANCE COMPANY

Dated: May 3, 2019

By:     */s/ James J. Hickey*
        James J. Hicke
        One of the Attorneys for Plaintiff
        United States Fire Insurance Company

        James J. Hickey
        James.Hickey@kennedyscmk.com
        Xavier Vergara
        Xavier.Vergara@kennedyscmk.com
        KENNEDYS CMK
        100 North Riverside Plaza, Suite 2100
        Chicago, IL 60606
        Phone: (312) 800-5000
        Fax: (312) 207-2110