# EXHIBIT A

10/26/2018 3:17:49 PM (GMT-04:00)

**12-Person Jury**

FILED DATE: 10/19/2018 11:32 AM  2018CH13064

FILED
10/19/2018 11:32 AM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2018CH13064

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION**

| | |
|---|---|
| CHRISTOPHER BYCZEK, individually and on behalf of all others similarly situated, | Case No.: |
| *Plaintiff,* | **2018CH13064** |
| v. | |
| XANITOS, INC, a Delaware corporation, | |
| *Defendant.* | |

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Christopher Byczek ("Byczek") brings this Class Action Complaint and Demand for Jury Trial against Defendant Xanitos, Inc. ("Xanitos") to put a stop to its unlawful collection, use, and storage of Plaintiff's and the putative Class members' sensitive biometric data. Plaintiff, for his Class Action Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences and, as to all other matters, upon information and belief.

**NATURE OF THE ACTION**

1.      Defendant Xanitos is a management company that provides housekeeping, patient transport, and central laundry services to hospitals throughout the United States.

2.      When employees first begin their jobs at Xanitos, they are required to scan their fingerprint in its biometric time tracking system as a means of authentication, instead of using key fobs or other identification cards.

3.      While there are tremendous benefits to using biometric time clocks in the workplace, there are also serious risks. Unlike key fobs or identification cards—which can be changed or replaced if stolen or compromised—fingerprints are unique, permanent biometric

FILED DATE: 10/19/2018 11:32 AM    2018CH13064

identifiers associated with the employee. This exposes employees to serious and irreversible privacy risks. For example, if a fingerprint database is hacked, breached, or otherwise exposed, employees have no means by which to prevent identity theft and unauthorized tracking.

4.      Recognizing the need to protect its citizens from situations like these, Illinois enacted the Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.* ("BIPA"), specifically to regulate companies that collect and store Illinois citizens' biometrics, such as fingerprints.

5.      Despite this law, Xanitos disregards its employees' statutorily protected privacy rights and unlawfully collects, stores, and uses their biometric data in violation of the BIPA. Specifically, Xanitos has violated (and continues to violate) the BIPA because it did not:

- Properly inform Plaintiff and the Class members in writing of the specific purpose and length of time for which their fingerprints were being collected, stored, and used, as required by the BIPA;

- Provide a publicly available retention schedule and guidelines for permanently destroying Plaintiff's and the Class's fingerprints, as required by the BIPA; nor

- Receive a written release from Plaintiff or the members of the Class to collect, capture, or otherwise obtain their fingerprints, as required by the BIPA.

6.      Accordingly, this Complaint seeks an order: (i) declaring that Defendant's conduct violates BIPA; (ii) requiring Defendant to cease the unlawful activities discussed herein; and (iii) awarding liquidated damages to Plaintiff and the proposed Class.

## PARTIES

7.      Plaintiff Christopher Byczek is a natural person and citizen of the State of Illinois.

8.      Defendant Xanitos is a company existing under the laws of the State of Delaware, with its principal place of business located at 3809 West Chester Pike, Newton Square, Pennsylvania. Xanitos conducts business throughout this County and the State of Illinois.

2

FILED DATE: 10/19/2018 11:32 AM 2018CH13064

## JURISDICTION AND VENUE

9. The Court has jurisdiction over Defendant pursuant to 735 ILCS 5/2-209 because Defendant conducts business transactions in Illinois and has committed tortious acts in Illinois.

10. Venue is proper in Cook County because Defendant conducts business transactions in Cook County.

## FACTUAL BACKGROUND

### I. The Biometric Information Privacy Act.

11. In the early 2000's, major national corporations started using Chicago and other locations in Illinois to test "new [consumer] applications of biometric-facilitated financial transactions, including finger-scan technologies at grocery stores, gas stations, and school cafeterias." 740 ILCS 14/5(b). Given its relative infancy, an overwhelming portion of the public became weary of this then-growing, yet unregulated technology. *See* 740 ILCS 14/5.

12. In late 2007, a biometrics company called Pay By Touch—which provided major retailers throughout the State of Illinois with fingerprint scanners to facilitate consumer transactions—filed for bankruptcy. That bankruptcy was alarming to the Illinois Legislature because suddenly there was a serious risk that millions of fingerprint records—which, are unique biometric identifiers, can be linked to people's sensitive financial and personal data—could now be sold, distributed, or otherwise shared through the bankruptcy proceedings without adequate protections for Illinois citizens. The bankruptcy also highlighted the fact that most consumers who had used that company's fingerprint scanners were completely unaware that the scanners were not actually transmitting fingerprint data to the retailer who deployed the scanner, but rather to the now-bankrupt company, and that their unique biometric identifiers could now be sold to unknown third parties.

3

FILED DATE: 10/19/2018 11:32 AM  2018CH13064

13.    Recognizing the "very serious need [for] protections for the citizens of Illinois when it [came to their] biometric information," Illinois enacted the BIPA in 2008. *See* Illinois House Transcript, 2008 Reg. Sess. No. 276; 740 ILCS 14/5.

14.    The BIPA is an informed consent statute which achieves its goal by making it unlawful for a company to, among other things, "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless it *first*:

> (1) informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored;
>
> (2) informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and
>
> (3) receives a written release executed by the subject of the biometric identifier or biometric information.

740 ILCS 14/15(b).

15.    BIPA specifically applies to employees who work in the State of Illinois. BIPA defines a "written release" specifically "in the context of employment [as] a release executed by an employee as a condition of employment." 740 ILCS 14/10.

16.    Biometric identifiers include retina and iris scans, voiceprints, scans of hand and face geometry, and—most importantly here—fingerprints. *See* 740 ILCS 14/10. Biometric information is separately defined to include any information based on an individual's biometric identifier that is used to identify an individual. *See id.*

17.    The BIPA also establishes standards for how companies in possession of biometric identifiers and biometric information must handle them. *See* 740 ILCS 14/15(c)–(d). For instance, the BIPA requires companies to develop and comply with a written policy—made

4

FILED DATE: 10/19/2018 11:32 AM 2018CH13064

available to the public—establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting such identifiers or information has been satisfied or within three years of the individual's last interaction with the company, whichever occurs first. 740 ILCS 14/15(a).

18. Ultimately, the BIPA is simply an informed consent statute. Its narrowly tailored provisions place no absolute bar on the collection, sending, transmitting or communicating of biometric data. For example, the BIPA does not limit what kinds of biometric data may be collected, sent, transmitted, or stored. Nor does the BIPA limit to whom biometric data may be collected, sent, transmitted, or stored. The BIPA simply mandates that entities wishing to engage in that conduct must make proper disclosures and implement certain reasonable safeguards.

**II.     Xanitos Violates the Biometric Information Privacy Act.**

19. By the time the BIPA passed through the Illinois Legislature in mid-2008, many companies who had experimented with using biometric data as an authentication method stopped doing so, at least for a time. That is because Pay By Touch's bankruptcy, described in Section I above, was widely publicized and brought attention to consumers' discomfort with the use of their biometric data.

20. Unfortunately, Xanitos failed to follow the BIPA. Xanitos continues to collect, store, and use employees' biometric data in violation of the BIPA.

21. Specifically, when employees first begin work at Xanitos, they are required to have their fingerprints scanned in order to enroll them in its fingerprint database.

22. Xanitos uses an employee time tracking system that requires employees to use their fingerprints as a means of authentication. Unlike a traditional time clock, employees have to use their fingerprint to "punch" in to or out of work.

5

FILED DATE: 10/19/2018 11:32 AM 2018CH13064

23. Xanitos failed to inform its employees of the complete purposes for which it collects their sensitive biometric data or to whom the data is disclosed, if at all.

24. Xanitos similarly failed to provide its employees with a written, publicly available policy identifying its retention schedule, and guidelines for permanently destroying its employees' fingerprints when the initial purpose for collecting or obtaining their fingerprints is no longer relevant, as required by the BIPA. An employee who leaves the company does so without any knowledge of when their biometric identifiers will be removed from Xanitos' databases—or if they ever will be.

25. The Pay By Touch bankruptcy that catalyzed the passage of the BIPA highlights why conduct such as Xanitos —whose employees are aware that they are providing biometric identifiers but are not aware of to whom or the full extent of the reasons they are doing so—is so dangerous. That bankruptcy spurred Illinois citizens and legislators to realize a critical point: it is crucial for people to understand when providing biometric data who exactly is collecting it, who it will be transmitted to, for what purposes, and for how long. But Xanitos disregards these obligations, and instead unlawfully collects, stores, and uses its employees' biometric identifiers and information without proper consent.

26. Ultimately, Xanitos disregards its employees' statutorily protected privacy rights by violating the BIPA.

## FACTS SPECIFIC TO PLAINTIFF BYCZEK

27. Plaintiff worked for Xanitos at AMITA Health Adventist Medical Center.

28. As a new employee, Xanitos required Plaintiff to scan his fingerprint so that it could use it as an authentication method to track his time. Xanitos subsequently stored Plaintiff's fingerprint data in its databases.

6

FILED DATE: 10/19/2018 11:32 AM 2018CH13064

29.     Each time Plaintiff began and ended his workday, Xanitos required him to scan his fingerprint.

30.     Xanitos never informed Plaintiff of the specific limited purposes or length of time for which it collected, stored, or used his fingerprint.

31.     Similarly, Xanitos never informed Plaintiff of any biometric data retention policy it developed, nor whether it will ever permanently delete his fingerprint.

32.     Plaintiff never signed a written release allowing Xanitos to collect or store his fingerprints.

33.     Plaintiff has continuously and repeatedly been exposed to the risks and harmful conditions created by Xanitos' violations of the BIPA alleged herein.

34.     Plaintiff Byczek now seeks liquidated damages under BIPA as compensation for the injuries Xanitos has caused.

## CLASS ALLEGATIONS

35.     **Class Definition**: Plaintiff Byczek brings this action pursuant to 735 ILCS 5/2-801 on behalf of himself and a Class of similarly situated individuals, defined as follows:

> All residents of the State of Illinois who had their fingerprints collected, captured, received, otherwise obtained, or disclosed by Xanitos while residing in Illinois.

The following people are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and its current or former officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

7

FILED DATE: 10/19/2018 11:32 AM    2018CH13064

36.    **Numerosity**: The exact number of Class members is unknown to Plaintiff at this time, but it is clear that individual joinder is impracticable. Defendant has collected, captured, received, or otherwise obtained biometric identifiers or biometric information from at least hundreds of employees who fall into the definition of the Class. Ultimately, the Class members will be easily identified through Defendant's records.

37.    **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

a)    whether Defendant collected, captured, or otherwise obtained Plaintiff's and the Class's biometric identifiers or biometric information;

b)    whether Defendant properly informed Plaintiff and the Class of its purposes for collecting, using, and storing their biometric identifiers or biometric information;

c)    whether Defendant obtained a written release (as defined in 740 ILCS 14/10) to collect, use, and store Plaintiff's and the Class's biometric identifiers or biometric information;

d)    whether Defendant has sold, leased, traded, or otherwise profited from Plaintiff's and the Class's biometric identifiers or biometric information;

e)    whether Defendant developed a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within three years of their last interaction, whichever occurs first;

f)    whether Defendant complies with any such written policy (if one exists); and

g)    whether Defendant used Plaintiff's and the Class's fingerprints to identify them.

38.    **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class and has retained counsel competent and experienced in complex

8

FILED DATE: 10/19/2018 11:32 AM 2018CH13064

litigation and class actions. Plaintiff has no interests antagonistic to those of the Class, and

Defendant has no defenses unique to Plaintiff. Plaintiff and his counsel are committed to

vigorously prosecuting this action on behalf of the members of the Class, and have the financial

resources to do so. Neither Plaintiff nor his counsel have any interest adverse to those of the

other members of the Class.

39.     **Appropriateness**: This class action is appropriate for certification because class

proceedings are superior to all others available methods for the fair and efficient adjudication of

this controversy and joinder of all members of the Class is impracticable. The damages suffered

by the individual members of the Class are likely to have been small relative to the burden and

expense of individual prosecution of the complex litigation necessitated by Defendant's

wrongful conduct. Thus, it would be virtually impossible for the individual members of the Class

to obtain effective relief from Defendant's misconduct. Even if members of the Class could

sustain such individual litigation, it would not be preferable to a class action because individual

litigation would increase the delay and expense to all parties due to the complex legal and factual

controversies presented in their Complaint. By contrast, a class action presents far fewer

management difficulties and provides the benefits of single adjudication, economies of scale, and

comprehensive supervision by a single court. Economies of time, effort, and expense will be

fostered and uniformity of decisions will be ensured.

**CAUSE OF ACTION**
**Violation of 740 ILCS 14/1, *et seq.***
**(On Behalf of Plaintiff and the Class)**

40.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

41.     The BIPA requires companies to obtain informed written consent from employees

before acquiring their biometric data. Specifically, the BIPA makes it unlawful for any private

9

FILED DATE: 10/19/2018 11:32 AM  2018CH13064

entity to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless [the entity] first: (1) informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; *and* (3) receives a written release executed by the subject of the biometric identifier or biometric information...." 740 ILCS 14/15(b) (emphasis added).

42.     The BIPA also mandates that companies in possession of biometric data establish and maintain a satisfactory biometric data retention (and—importantly—deletion) policy. Specifically, those companies must: (i) make publicly available a written policy establishing a retention schedule and guidelines for permanent deletion of biometric data (*i.e.*, when the employment relationship ends); and (ii) actually adhere to that retention schedule and actually delete the biometric information. *See* 740 ILCS 14/15(a).

43.     Unfortunately, Xanitos fails to comply with these BIPA mandates.

44.     Xanitos is a company and thus qualifies as a "private entity" under the BIPA. *See* 740 ILCS 14/10.

45.     Plaintiff and the Class are individuals who had their "biometric identifiers" collected by Xanitos (in the form of their fingerprints). *See* 740 ILCS 14/10.

46.     Plaintiff's and the Class's biometric identifiers or information based on those biometric identifiers were used to identify them, constituting "biometric information" as defined by the BIPA. *See* 740 ILCS 14/10.

47.     Xanitos violated 740 ILCS 14/15(b)(3) by negligently failing to obtain written releases from Plaintiff and the Class before it collected, used, and stored their biometric

10

FILED DATE: 10/19/2018 11:32 AM   2018CH13064

identifiers and biometric information.

48.    Xanitos violated 740 ILCS 14/15(b)(1) by negligently failing to inform Plaintiff and the Class in writing that their biometric identifiers and biometric information were being collected and stored.

49.    Xanitos violated 740 ILCS 14/15(b)(2) by negligently failing to inform Plaintiff and the Class in writing of the specific purpose and length of term for which their biometric identifiers or biometric information was being collected, stored, and used.

50.    Xanitos violated 740 ILCS 14/15(a) by negligently failing to publicly provide a retention schedule or guideline for permanently destroying its employees' biometric identifiers and biometric information.

51.    By negligently collecting, storing, and using Plaintiff's and the Class's biometric identifiers and biometric information as described herein, Xanitos violated Plaintiff's and the Class's rights to privacy in their biometric identifiers or biometric information as set forth in the BIPA, 740 ILCS 14/1, *et seq.*

52.    On behalf of himself and the Class, Plaintiff seeks: (1) injunctive and equitable relief as is necessary to protect the interests of the Plaintiff and the Class by requiring Defendant to comply with the BIPA's requirements for the collection, storage, and use of biometric identifiers and biometric information as described herein; (2) liquidated damages of $1,000 per violation for each of Defendant's negligent violations of the BIPA pursuant to 740 ILCS 14/20(1); and (3) reasonable attorneys' fees and costs and expenses pursuant to 740 ILCS 14/20(3).

11

FILED DATE: 10/19/2018 11:32 AM   2018CH13064

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Christopher Byczek, on behalf of himself and the Class, respectfully requests that the Court enter an Order:

A.     Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiff Byczek as representative of the Class, and appointing his counsel as Class Counsel;

B.     Declaring that Defendant's actions, as set out above, violate the BIPA;

C.     Awarding statutory damages of $1,000 for each of Defendant's violations of the BIPA, pursuant to 740 ILCS 14/20(1);

D.     Awarding injunctive and other equitable relief as is necessary to protect the interests of the Class, including an Order requiring Defendant to collect, store, and use biometric identifiers or biometric information in compliance with the BIPA;

F.     Awarding Plaintiff and the Class their reasonable litigation expenses and attorneys' fees;

G.     Awarding Plaintiff and the Class pre- and post-judgment interest, to the extent allowable; and

H.     Awarding such other and further relief as equity and justice may require.

## JURY TRIAL

Plaintiff demand a trial by jury for all issues so triable.

Respectfully submitted,

**CHRISTOPHER BYCZEK**, individually and on behalf of all others similarly situated,

Dated: October 19, 2018

By: /s/J. Eli Wade-Scott
One of Plaintiff's Attorneys

12